Vista Eng'g Corp. v Everest Indem. Ins. Co. (2018 NY Slip Op 03730)





Vista Eng'g Corp. v Everest Indem. Ins. Co.


2018 NY Slip Op 03730


Decided on May 24, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 24, 2018

Andrias, J.P., Gesmer, Kern, Singh, Moulton, JJ.


5839 302991/15

[*1]Vista Engineering Corporation, Plaintiff-Appellant,
v
Everest Indemnity Insurance Company, Defendant-Respondent, East Coast Painting & Maintenance, et al., Defendants.


Baxter Smith & Shapiro, P.C., White Plains (Sim R. Shapiro of counsel), for appellant.
Kennedys CMK LLP, New York (Ann M. Odelson of counsel), for respondent.



Order, Supreme Court, Bronx County (Kenneth L. Thompson, J.), entered on or about January 4, 2016, which denied plaintiff's motion for summary judgment declaring that defendant insurer was obligated to defend and indemnify it in an underlying personal injury action, and granted defendant's cross motion for summary judgment declaring that it has no duty to defend or indemnify plaintiff in that action, modified on the law, to deny defendant's motion, and remand the matter for further proceedings, and otherwise affirmed, without costs.
This appeal concerns an insurance coverage dispute. Because its resolution involves the application of Carlson v American Intl. Group, Inc. (30 NY3d 288 [2017]), which was handed down by the Court of Appeals when this appeal was pending and all the briefing complete, we remand to the motion court for further fact-finding.
In September 2010, defendant East Coast Painting (East Coast) entered into a subcontract with plaintiff general contractor Vista Engineering Corporation (Vista) to perform work at the Queensboro Plaza subway station. The subcontract required East Coast to purchase insurance naming Vista and the New York City Transit Authority (TA) as additional insureds. East Coast obtained an insurance policy from defendant Everest Indemnity Insurance Company (Everest).
East Coast employee Louis Soto allegedly sustained injuries while working on the Queensboro Plaza project on June 3, 2011. Soto brought a personal injury action in the Bronx soon thereafter. By correspondence to East Coast's broker dated August 15, 2011, Vista's insurer, through its claims administrator, sought a defense and indemnification from East Coast on behalf of Vista. This tender was forwarded to Everest's claim administrator, which, in correspondence dated September 20, 2011, acknowledged receipt of the tender.
By correspondence dated November 17, 2011, Everest's claims administrator disclaimed coverage, invoking the insurance contract's "Third Party Action Over" exclusion, which barred claims arising from injuries to East Coast's employees. The parties do not dispute that the policy excludes coverage for employees of East Coast.
Vista commenced the instant action seeking a declaration that Everest has a duty to defend and indemnify it in the underlying action. Vista moved for summary judgment, arguing that Everest had failed to disclaim within a reasonable time, as required by Insurance Law § 3420(d)(2), which states:
"If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a[n]... accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."
Everest cross-moved for summary judgment declaring that it had no duty to defend or indemnify because section 3240(d)(2) applies only to insurance policies "issued or delivered" in New York. Everest argued that it is a New Jersey insurer and that it issued the policy to East Coast, a New Jersey company, and that therefore the policy was not "issued or delivered" in New York.
Supreme Court, relying upon Carlson v American Intl. Group., Inc., (130 AD3d 1477 [4th Dept 2015]), denied Vista's motion and granted Everest's cross motion, holding that because the policy was issued and delivered outside of New York State, the timeliness requirements of § 3240(d)(2) did not apply.
Vista appealed. The parties completed their briefing in early November 2017. On November 20, 2017, the Court of Appeals issued its decision in Carlson v American Int'l Group, Inc. (30 NY3d 288 [2017]), modifying the Fourth Department.
The Court of Appeals held that the applicability of Insurance Law § 3420(d)(2) depends on (1) a policy covering risks located in New York, and (2) the insured being located in New York. The Carlson Court, for the first time, determined that a company was "located in" New York if it had a "substantial business presence" there (30 NY3d at 306). The Court found that under that test the insured in Carlson, DHL, was located in New York. In dicta, the Court reasoned that the legislature did not intend that a company "doing business in New York and purporting to cover risks in New York" be able to evade the Insurance Law (id. at 309).
We agree with the dissent that the first prong of Carlson was satisfied in this case. The risks covered under the Everest policy include the Queensboro Plaza project, which is located in New York State. However, we find that the record is not sufficiently developed for us to decide whether East Coast had a substantial business presence in New York under the Court of Appeals' decision in Carlson.[FN1]
It is well settled that a party may not argue on appeal a theory never presented to the court of original jurisdiction (see Tortorello v Carlin, 260 AD2d 201, 205 [1st Dept 1999]; Sean M. v City of New York, 20 AD3d 146, 149-150 [1st Dept 2005] [same]; Admiral Ins. Co. v Marriott Intl., Inc., 79 AD3d 572 [1st Dept 2010], lv denied 17 NY3d 708 [2017] [same]; Elter v New York City Hous. Auth., 260 AD2d 232 [1st Dept 1999] [same]; Botfeld v Wong, 104 AD3d 433, 434 [1st Dept 2013] [argument improperly raised for the first time on appeal since the issue was not a purely legal issue apparent on the face of the record but required for resolution facts not brought to the opposing party's attention on the motion]). In Preserver Ins. Co. v Ryba (10 NY3d 635 [2008]), the Court of Appeals held that although the policy at issue covered risks in New York, the insured was a New Jersey company, with its only offices located in New Jersey, and, hence, the insured was not located in New York. Nor was the policy "issued for delivery" in New York (id. at 642). While the Court of Appeals in Carlson held that the "meaning of issued or delivered' is informed by our decision in" Preserver (Carlson, 10 NY3d at 296), the Court expanded on the definition of "located in" by adding a substantial business presence element. The dissent discounts the fact that this element was not briefed before the motion court, or before us. We decline to grant Vista summary judgment on an incomplete record and on a theory that was not raised below.
As the dissent notes, the current record does contain some indicia that East Coast had a substantial business presence in New York. The payment under the subcontract was for $982,500, and there is email correspondence that the Queensboro Plaza project was East Coast's "main job." However, that email demonstrates why the record must be further developed before a decision can be made on summary judgment. The email was forwarded by Jennifer Connell-Weibelt, an insurance representative for nonparty Environmental Underwriting Solutions (EUS), who avers in her affidavit that "EUS was neither an employee nor an agent of Everest, nor did [*2]EUS have binding authority from Everest." The email was written by a George Zerlanko to a Beth Linton; we do not have affidavits by either of them as to their roles in the process. Nor is the June 22, 2010 email referencing East Coast's "main job" authenticated as a business record. Thus, we do not know how much credence to give the "main job" comment.
Because the Carlson Court did not set forth a specific definition of substantial business presence, and because the record is insufficiently developed concerning East Coast's business presence in New York, we remand to allow the parties to develop the record and give Supreme Court an opportunity to meaningfully review the case in light of Carlson.
All concur except Andrias, J.P. and Gesmer, J. who dissent in a memorandum by Andrias, J.P. as follows:


ANDRIAS J.P. (dissenting)
 The outcome of this action turns on whether or not the timeliness requirements of Insurance Law § 3420(d) apply to the commercial liability policy issued by defendant Everest Indemnity Insurance Company to defendant East Coast Painting & Maintenance.
 In Carlson v American Intl Group, Inc. (30 NY3d 288 [2017]), decided after the order on appeal was entered, the Court of Appeals, applying the "Preserver [Preserver Ins. Co. v Ryba, 10 NY3d 635 (2008)] standard," held that Insurance Law § 3420, as amended in 2008 (L 2008, ch 388), applies "whenever a policy covers insureds and risks located in this state" (id. at 306 [internal quotation marks omitted]). The Court then determined that the insured, DHL Worldwide Express, Inc., was located in New York "because it has a substantial business presence and creates risks in New York" (id.).
We all agree that the Everest policy at issue expressly covers risks created by East Coast in New York. However, stating that the Carlson Court determined for the first time that a "substantial business presence" in the state could satisfy the "located in" New York requirement, the majority remands to Supreme Court for further proceedings "[b]ecause the Carlson Court did not set forth a specific definition of substantial business presence, and because the record is insufficiently developed concerning East Coast's business presence in New York." I disagree.
As the majority states, in Carlson, the Court of Appeals observed that the legislature did not intend that a company "doing business in New York and purporting to cover risks in New York" be able to evade the Insurance Law (30 NY3d at 309). Guided by this intention and giving the term "substantial" its plain and ordinary meaning, I find that the record establishes that East Coast and plaintiff, Vista Engineering Corporation, an additional insured under the policy, availed themselves of the benefits and protections of the laws of New York, generated considerable income in the state, and had a substantial business presence here during the Everest policy's original and renewal terms. Furthermore, endorsements were added to the policy for the express purpose of covering risks created by the work East Coast performed on a New York City Transit Authority (NYCTA) project in New York. Accordingly, I dissent and would find that the timeliness requirements of Insurance Law § 3420(d) apply.
In July 2010, the Metropolitan Transit Authority notified Vista that it had been awarded "Contract C-34903, Overcoat Painting of Elevated Structure 27th Street-41 Avenue, Astoria & Flushing Lines in the Borough of Queens" for the lump sum price of $7,191,000. In September 2010, Vista, pursuant to a written subcontract, hired East Coast to perform certain overcoat painting work on the project for the lump sum price of $982,500.
The Vista/East Coast subcontract identified the project owner as "The Metropolitan Transportation Authority Acting by [NYCTA]" and the Architect/Engineer as NYCTA. The subcontract contained indemnity, hold harmless and procurement of insurance clauses which provided:
"18. To the fullest extent permitted by law, Subcontractor [East Coast] shall indemnify and hold Vista, General Contractor, the owner, and architect (excluding Professional liability) harmless from claims, damages, losses and expenses, including attorney fees and disbursements, arising out [sic] or relating to the performance of this Subcontractor, provided the same is caused in whole or part [*3]by Subcontractor, its Subcontractor, supplier, agent, employee, or someone for whose acts or omissions any of them might be liable.
"19. In addition to workmen's compensation coverage, Subcontractor shall maintain liability insurance coverage for bodily injury and property damage in such forms and in such amounts as required by the prime contract. All insurance policies shall name Owner [NYCTA] and Vista as additional insured. Certificates of Insurance shall name Owner and Vista as additional insured. Certificates of Insurance shall be submitted to Vista prior to commencing performance and shall contain a provision that such policies will not be canceled until at least 30 days written notice has been given to Vista."
To demonstrate its compliance with these contractual obligations, East Coast, through its broker Global Indemnity Insurance Agency (Global), procured two certificates of insurance that showed that it had purchased a commercial general liability policy from Everest, a New Jersey insurance company. The first, issued to Vista, stated that it was "issued as a matter of information only." The second, issued to NYCTA/MTA at its Manhattan business address, stated that it covered that entity "and its subsidiaries and affiliates, and the City of New York (as owner)." That certificate of insurance also stated:
"The subscribing insurance company(s), authorized to do business in the State of New York, certifies that insurance of this kind and type and for limits of liability herein stated, covering the Agreement/Contract herein designated, has been procured by and furnished on behalf of the insured and is in full force and effect for the period stated on the front of the Certificate of Insurance."
The policy's "Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization" endorsement identified the name of additional insureds as "Blanket where required by written contract." The "Schedule of Additional Insureds-Owners, Lessees or Contractors-Completed Operations," "Contractual Liability - Railroads" and "Amendment of Limits of Insurance" all named NYCTA. The policy also contained a "Primary and Noncontributory Provision - Your Operations for Named Person" endorsement, which specifically applied to "New York Transit/MTA, 2 Broadway 21st Floor, New York, NY 10004."
In June 2011, East Coast employee Louis Soto was injured when he fell from a ladder while performing work at the Queensboro Plaza subway station and commenced a Labor Law action in New York against Vista. On August 15, 2011, Vista's insurer, Argonaut Insurance Company, through its claims administrator, Colony Specialty, sought a defense and indemnification from East Coast on behalf of Vista and NYCTA, predicated on the indemnification and hold harmless and insurance procurement provisions contained in the Vista/East Coast subcontract. On August 22, 2011, Global forwarded a copy of Colony's tender letter to Everest's wholesale broker, Insurance Office of America, Inc. d/b/a Environmental Underwriting Solutions (EUS), which forwarded it to FARA Insurance Services (FARA), a third-party claims administrator for Everest.
On or about August 28, 2012, Vista filed a third-party summons and complaint in the underlying action asserting causes of action against East Coast sounding in contractual indemnification and contribution, common-law indemnification and contribution, and breach of contract to procure insurance. On September 20, 2011, FARA, on Everest's behalf, stated that Everest was reserving all rights while it investigated the claim, and requested that Colony send it a copy of Vista's contract with NYCTA and the "full complaint" it had referenced in its tender letter.
On September 21, 2011, Colony emailed FARA a copy of the summons and complaint in the underlying action and the NYCTA/Vista contract. On November 17, 2011, FARA disclaimed coverage to Vista and NYCTA on Everest's behalf based upon a "Third Party Action Over Exclusion Endorsement" in the policy, which excluded coverage for bodily injury to employees of East Coast. Consequently, Vista commenced this action seeking a declaration that [*4]Everest has a duty to defend and indemnify it in the underlying action because Everest's disclaimer, made just under three months after the coverage tender was made, was untimely under Insurance Law § 3420(d)(2), which provides:
"If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."
The motion court declared that Everest has no duty to defend or indemnify Vista, on the ground that Section 3420(d)(2) does not apply because "[a]ll of the evidence indicates that the pertinent policy and endorsements were issued and delivered outside the state of New York." Based on the Court of Appeals subsequent decision in Carlson (30 NY3d 288 [2017], supra), this was error.
In Carlson, the plaintiff's decedent was killed when a truck painted with DHL Express's logo and owned by MVP Delivery and Logistics, struck his car. After obtaining a judgment against MVP, the plaintiff commenced an action pursuant to Insurance Law Section 3420(a)(2) seeking, among other things, to collect on a policy issued by American Alternative Insurance Co. (AAIC) to DHL, which had a cartage agreement with MVP. AAIC contended that it was not subject to suit under section 3420 because DHL's policy was not issued from an AAIC office located in New York, and because New York was not DHL's principal place of business.
The Appellate Division, Fourth Department dismissed the cause of action against AAIC on the ground that the policy, which was issued in New Jersey and delivered in Washington and then in Florida, was not "issued or delivered in this state," as required by Insurance Law § 3420(a)(2) (130 AD3d 1477 [4th Dept 2015]). The Court of Appeals, guided by its decision in Preserver Ins. Co. v Ryba (10 NY3d 635 [2008], supra), modified the Fourth Department's Order to deny AAIC's motion to dismiss, stating:
"Insurance Law § 3420 does not define the term issued or delivered in this state,' but other provisions of the Insurance Law are instructive: [T]he proper interpretation of the term "issued or delivered in this state" refers both to a policy issued for delivery in New York, and a policy issued for delivery outside of New York' (Ops Gen Counsel NY Ins Dept No. 09-06-08). In Preserver, we interpreted section 3420(d), which then required insurers to provide written notice when disclaiming coverage under policies issued for delivery' in New York. We held that [a] policy is "issued for delivery" in New York if it covers both insureds and risks located in this state' (10 NY3d at 642). Thus, under Preserver, issued for delivery' was interpreted to mean where the risk to be insured was located—not where the policy document itself was actually handed over or mailed to the insured. We interpreted section 3420 to provide a benefit— deliberately in derogation of the common law—to New Yorkers whenever a policy covers insureds and risks located in this state' (id.). Applying the Preserver standard to the facts of this case, it is clear that DHL is located in' New York because it has a substantial business presence and creates risks in New York. It is even clearer that DHL purchased liability insurance covering vehicle-related risks arising from vehicles delivering its packages in New York, because its insurance agreements say so.
***
"Interpreting issued or delivered in this state' to apply exclusively to policies issued by an insurer located in New York or by an out-of-state insurer who mails a policy to a New York address would undermine the legislative intent of Insurance Law § 3420. It would require an assumption that the legislature intended to remove coverage benefitting injured New York residents if the policy was mailed [*5]from another state, but to increase coverage for foreign victims injured elsewhere so long as the policy was mailed to New York or underwritten by a New York-based insurer—hardly plausible in light of the express purposes of section 3420 and the 2008 amendments" (30 NY3d at 305-306, 307 [internal quotation marks, brackets and footnotes omitted]).
Thus, under Carlson, if an out-of-state insurer issues a policy covering risks located in New York to a company that has a substantial business presence in New York, the disclaimer requirements of Insurance Law § 3420(d) will apply, even though the policy is issued and delivered outside the state (see also Columbia Cas. Co. v National Emergency Servs., 282 AD2d 346, 347 [1st Dept 2001] ["We reject plaintiff's claim that the timely disclaimer provision is inapplicable in this case merely because the policy in question was issued out of State and listed the address of the insured's corporate headquarters out of State. The policy expressly covers insureds and risks located in New York and must therefore be deemed issued for delivery in New York"]).
Here, as to the first prong of the Carlson analysis, Everest issued the policy knowing that it was providing coverage for a construction project that was located in New York and that the activities of East Coast and Vista would create risks in the state [FN2]. The record demonstrates that Everest first issued policy number EF4ML01588-091 for the policy period July 6, 2009 to July 6, 2010 to East Coast. Several months after the policy was issued, East Coast's broker, Global, contacted EUS and requested that endorsements be added in connection with a NYCTA project in New York, and the endorsements were added, effective December 8, 2009.
In June 2010, EUS received a renewal application from Global. EUS was advised by Global that the renewal policy would have to include the endorsements arising out of the NYCTA project that had been added to the 2009 policy. By email dated June 22, 2010, EUS forwarded the renewal information to Emanouil Ivanaov of Everest. Everest then issued the renewal policy with the endorsements requested by Global, fully aware that it was insuring risks located in New York. Indeed, the policy provided named additional insured coverage to a New York entity, listing NYCTA's New York address in multiple endorsements [FN3].
As to the second prong of the Carlson analysis, the definition of "substantial" in Black's Law Dictionary (10th ed 2014) includes "having actual, not fictitious, existence," "[i]mportant, essential, and material; of real worth and importance," and "[c]onsiderable in amount or value; large in volume or number." Employing these commonly understood meanings of the word, the record conclusively establishes that East Coast and Vista had a "substantial" business presence in New York.
While Vista is a New Jersey corporation and East Coast is a New Jersey limited liability company, both are registered with the New York Department of State as foreign entities authorized to do business in New York pursuant to either Business Corporation Law § 1304(a)(5) or Limited Liability Company Law § 802(a)(3). In its answer in the underlying action, Vista admitted that it (i) was and still is a foreign business corporation duly authorized to do business in the State of New York; (ii) performed certain work at the subject location in Queens; (iii) was retained by the Metropolitan Transportation Authority and/or NYCTA to perform work, labor and services at the aforesaid premises; and (iv) retained East Coast for specified work on the project in accordance with a written subcontract agreement.
The record further establishes that both Vista and East Coast garnered considerable income in the state. The price for the work under the Vista/NYCTA contract was $7,791,000. The price for the work under the Vista/East Coast subcontract was $982,500. Indeed, an email from East Coast's broker, Global, to EUS, a copy of which was forwarded to Everest with the renewal application in 2010, states that the "main job that [East Coast] is still performing is for the MTA in New York City." While the majority questions the probative value of the this email, it was authored by East Coast's broker, Global, for the express purpose of having the endorsements covering the NYCTA project in the original policy included in the renewal policy. While the majority states that the email was not authenticated as a business record, it was produced by Everest in its submissions to the motion court. Moreover, the record establishes that the endorsements requested by Global were included in the policy renewal to cover the risks associated with the NYCTA project. In this regard, the fact that the Everest policy had to be renewed for a second year with the requested endorsements demonstrates that the coverage was for an ongoing project in New York, rather than a brief interlude in the state. Lastly, affidavits in the record state that there are three personal injury cases arising from East Coast's work in New York and that the plaintiffs underwent medical treatment in New York and collected New York State workers' compensation benefits.
The majority states that we may not consider whether East Coast has a substantial presence in New York because Carlson was decided after the order on appeal was issued and was not addressed by the parties in their briefs. However, both the Court of Appeals decision in Preserver and the Fourth Department's decision in Carlson were raised before the motion court with respect to the question of whether the Everest Policy was "issued or delivered" in New York. Further, by letter dated November 29, 2017, the attorney for plaintiff requested that we take judicial notice of the Court of Appeals decision in Carlson, which was addressed extensively at oral argument in this Court. Accordingly, we may apply the Preserver standard, as clarified in Carlson, to the established facts in the record to determine whether East Coast and/or Vista, an additional insured, were located in New York when the policy was issued and renewed.
There is simply no support for Everest's argument that, under Preserver, the insured must maintain an office in New York for it be deemed to have a substantial presence in the state. In Preserver, Ryba, an employee of the insured, a New Jersey company that did not maintain an office in New York, was injured while working at a construction site in New York. Ryba sued the owner/general contractor, which in turn commenced a third-party action against the insured asserting causes of action for common-law indemnification, contribution, contractual [*6]indemnification, and breach of contract.
The insured had been issued a workers' compensation and employers' liability policy by Preserver, a New Jersey company, underwritten and delivered in New Jersey. "Part Three-Other States Insurance," stated that:
"[i]f you begin work in any one of those states [shown in Item 3.C. of the Information Page] after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page" (Preserver, 10 NY3d at 641 [internal quotation marks omitted]).
Part Three also required that the insured "[t]ell us at once if you begin work in any state listed in Item 3.C. of the Information Page" (id. [internal quotation marks omitted]).
While the liability policy generally covered risks in New York as an Item 3.C. state, the Court of Appeals found that it could not be said that the insured was located in New York where its only offices were located out of state. Thus, the Court held that the policy was not "issued for delivery" in New York within the meaning of Insurance Law § 3420(d), which requires that both the risk and the insured be located in New York.
However, while the insured allegedly agreed to list the owner/general contractor as an additional insured in the policy, it failed to do so. Moreover, while New York was covered generally as an Item 3.C. state, no specific New York location or project was listed in the policy, and there was no evidence that the insured informed Preserver that it had commenced operations on the owner/general contractor's New York property. In contrast, here, Everest was aware that East Coast was involved in a NYCTA project in Queens and that Vista and NYCTA were additional insureds. While Vista and East Coast were New Jersey businesses, both were authorized to do business in New York and garnered substantial income from the NYCTA project in the state.
Moreover, Everest's argument that Carlson must be read narrowly in light of Preserver to require a New York office in order to find a substantial business presence in New York is too narrow in light of the policy considerations set forth in Carlson. As the Court of Appeals stated in Carlson,
"Generally, statutes designed to promote the public good will receive a liberal construction and be expounded in such a manner that they may, as far as possible, attain the end in view" (McKinney's Cons Laws of NY, Book 1, Statutes § 341, Comment). The overall legislative intent of Insurance Law § 3420 is to protect the tort victims of New York State, and the subsequent amendments to section 3420 were designed to expand the remedy, not to contract it" (30 NY3d at 306—307).
Thus, as a claim for common-law indemnification arising directly from an underlying bodily injury claim falls within the notice provisions of Insurance Law § 3420(d)(2) (see Sierra v 4401 Sunset Park, LLC, 101 AD3d 983, 985 [2d Dept 2012], affd 24 NY3d 514 [2014]; Admiral Ins. Co. v State Farm Fire & Cas. Co., 86 AD3d 486, 488-90 [1st Dept 2011]; Old Republic Ins. Co. v United Natl. Ins. Co., 2017 NY Slip Op 30789[U], *6 [Sup Ct, NY County 2017]), I would [*7]remand the matter to the motion court to determine whether Everest's disclaimer was untimely under Insurance Law § 3420(d) (see Stachowski v United Frontier Mut. Ins. Co., 148 AD3d 1716, 1717-1718 [4th Dept 2017]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 24, 2018
CLERK



Footnotes

Footnote 1:The fact that Vista asked this Court to take judicial notice of Carlson and that it was addressed extensively at oral argument has no bearing on whether the record is sufficiently developed to permit a determination.

Footnote 2:Vista demonstrated that it was properly an additional insured under the policy based on its written agreement with East Coast and the additional insured by written contract endorsement in the policy (see 77 Water St., Inc. v JTC Painting & Decorating Corp., 148 AD3d 1092, 1096 [2d Dept 2017]). Indeed, in its disclaimer, Everest did not dispute that Vista is properly an additional insured under the policy, and relied solely on the "Third-Party Action Over" exclusion.

Footnote 3:While Everest states that the endorsements are not relevant because they reference a different contract number (C-34795) than the subject contract (C-34903) between Vista and East Coast, the "Contractual Liability - Railroads" endorsement references "NY City Transit/MTA" and Job Site "Contract #C34903." The "Primary and Noncontributory Provision - Your Operations for Named Person" endorsement identifies "New York Transit/MTA, 2 Broadway 2nd Floor, New York, NY 10004." Further, affidavits by Jennifer Connell-Wiebelt of EUS and Tom Barrett, Director of Environmental Underwriting for Everest, submitted on the motion, state that "[w]ith respect to Contract C-34903, the 2010 Everest Policy has a $1 million per occurrence ($2 million general aggregate)." Further, in the disclaimer letter dated November 17, 2011, FARA stated that "[w]e reviewed the above-captioned [underlying Soto] Complaint in conjunction with the contracts provided between Vista ... and [East Coast] . . . under job #34904, and the insurance policy EF4ML01588-101, issued by [Everest] to [East Coast]."